Good morning. May it please the court. My name is Kasha Poyers. I represent the appellant, Mr. Jesus Delgado. Your Honor, in this case, the agent did not have reasonable suspicion to stop Mr. Delgado, and therefore the district court erred by denying the defendant's motion to suppress the evidence. The factors in this case were that an agent saw two trucks leaving a recreational park in a law-abiding fashion. Actually, he saw them going in with an open bed, come out 30 minutes later with a tarp over the bed. There's a somewhat significant intervening event, isn't there, before the pickup left? Correct. The two trucks were seen going into a park, and one of the trucks was seen without a tarp over the back of the bed. The bed of the truck at that time was seen to be empty. However, the district court held that all up until the point where the two trucks left the park, none of that was suspicious behavior. It was actually consistent. It wasn't. Of course, it wasn't suspicious behavior. It looked like he was going in to do off-roading in the dunes, but then he turns around 30 minutes later and he's got a tarp over the back. That's when it became suspicious. What's wrong with that? The fact that a vehicle leaves a recreational park in a law-abiding fashion 30 minutes later does not rise to a level of reasonable suspicion that would allow the agent in that case to pull that vehicle over. There's nothing in the record to support that 30 minutes was suspicious in any way. It was merely a hunch that the agent was acting upon. Well, not really. During the 30 minutes that he was there, he made all the preparations indicating that he was going to go riding the dunes. He put a flag on the antenna. He deflated his tires. He was with another car, from which you can infer that drug deals often go down with tandem cars driving in tandem. The officers knew that this was an area near the border in which drugs are often dealt. And you add it up and you say it makes no sense that these people would go in, behave as if they're going riding, leave within 30 minutes with a tarp on the back that wasn't there when they went in. Why doesn't that add up to plenty of suspicion that a drug deal may have gone down? Your Honor, because I believe that each of the factors that the court and the agents relied upon were that this – well, one of the things that the court relied upon heavily was that this was a high-crime area. Yet there's no evidence presented by the government nor the agent that this was, in fact, a high-crime area. I don't understand why the evidence isn't in the form of the police officer or the law enforcement officer or the border patrol or whoever it was saying, you know, look, this is my beat and it's near the border and there is a lot of criminal activity that goes on in this beach. That's evidence, isn't it? Well, that's exactly what one of the factors in Diaz-Juarez found concerning was that the only thing the officer was able to say was that I believe this is a high-crime area, yet was unable to give any – This has no connotation that is problematic. In other words, the high-crime area wasn't a proxy for race or something else that causes a problem. This is just a beach, a recreational beach near the border, and the officer whose beat it is says it's a high-crime area. Correct, but yet supports that statement with nothing in the record. In fact, the record – Why does he have to support it with anything? I'm sorry? Why does he have to come in with a bunch of statistics? Because the case law out of this court says that in order to rely upon that factor as a consideration – In other words, not being used as a proxy for race. In Diaz-Juarez, the court – this court decided how much weight to give to the allegation that this was a high-crime area, and in that case, the officer did not come with any factual support to base that inference upon, and therefore this court decided that that was a factor, yet of minimal importance because it was unsupported by anything. It is a factor. So I'm saying if you factor in high-crime area, if you factor in somebody who comes in and tries to communicate an impression that he's going to go play in the dunes and then promptly leaves after going through elaborate preparations to go ride in the dunes, leaves with a tarp that's covering something that wasn't covered before he went on the beach, and he's driving with somebody else. However, the fact that a black tarp is covering the bed of a pickup truck, a common vehicle to be in that area, and to cover something, it could have been anything. In fact, the agent said that he didn't know what was in the cab of the truck going in, nor did he know what was in the white Ford Bronco. So a reasonable inference. But under Arvizu, we have to look at all – we have to look at the totality. We can't isolate each individual instance. I mean, we got slapped down for doing that, and indeed in Arvizu, the Supreme Court itself noted that the area in which the activity took place was a relevant factor, was remote, known by the agents to be a smuggler's route. And in the case you cite, it says, while Diaz's presence in a high-crime area cannot alone provide reasonable suspicion, Agent Rodriguez could consider this fact informing reasonable suspicion. Correct. And what I'm actually asking this court to do, and what I think the government is not, is to look at the totality of the circumstances, which includes the behavior of the vehicles as it's entering into the park, which is absolutely – Yeah, well, he does. I mean, everybody is doing that. That's what I have a little trouble with what you are asking us to do. He's staking out an area which they believe and they act upon it. You don't think – I mean, this guy is on the clock. So I don't think they position an undercover agent outside his park on a whim. So at least there's some credibility to the notion, at least the law enforcement people think it's a high-crime area, and they act accordingly. He observes people going in. He does not stop the guy at that point. There's nothing to trigger suspicion. So he looks at the course of conduct. As Judge Reimer said, he flattens the tires. He does all the normal stuff. Then the agent articulates what triggered his suspicion. Short turnaround, tandem driving, tarp over the back that wasn't there before, and he puts it together and says, this looks like there might have been a drug deal, which is the kind of thing that gets done out here. And you're saying, well, that doesn't – that totality doesn't add up. That's what I'm saying, Your Honor. And if you look at the cases such as Arvizu, Diaz-Juarez, Montero-Camargo, each of those cases have factors that are much higher, rise to a higher level than the case that we have here. There are articulable facts that you can point to in Arvizu and Diaz-Juarez that you can see why it reaches to a level of suspicion. Such as in Diaz-Juarez, the defendant in that case was near the border. It was late at night. It was a high-crime area. And the court said that that was enough to have suspicions aroused, but it did not ripen into reasonable suspicion until the agent noticed driving behavior of the vehicle, such as the suspensions modified the way the driver was driving on the road. And that's what rose it to a level of reasonable suspicion. And I think that's similar to our facts, but yet we don't have those facts that ripen it into reasonable suspicion. Well, I think, counsel, the shortened period before they came back out and the tarp is that additional factors which give rise to the suspicion. Let me ask you this. If we disagree with you on this case, do you want a limited remand under Ameline? Yes. In this case, the district court sentenced Mr. Delgado before the Booker and Blakely cases came out, and the district court indicated that it was applying the sentencing guidelines in a mandatory fashion. And so I believe that with the recent cases that have come out, that a limited remand would be appropriate for the court to indicate whether it would have imposed the same sentence had it known the sentencing guidelines were advisory. That's correct. Unless you might have gone upward. Okay. Thank you very much. Thank you. May it please the Court, Steve Miller for the United States. When examining reasonable suspicion, as I said in my brief, it should be a holistic approach where the whole is greater than the sum of its parts. And as you have reviewed, what we have here is a border area notorious for alien smuggling with a tandem. We've indicated that we understand. Yes. Do you have anything that you feel like you need to respond to? No. Okay. Thank you. Any comment on sentencing? In this case, I mean, I would submit to this court's decision whether to remand it. But in this case, the government's recommendation was 51 months. And the defendant made all of the requests for all of the reductions and many of which were agreed to by the government and some that were opposed. And in this case, the defendant made a motion for a downward departure for a combination of conditions. And it was denied. And the court imposed a sentence at the mid range. The court considered all of the mitigating factors, granted some, denied some, and said, I see no reason to mitigate or aggravate and impose a sentence in the mid range. And if under the Booker case that the reasonableness of the sentences, the baseline is set by what the guideline range is. In this case, that the 33 to 41 months was the reasonable range in order to comply with our policy of trying to standardize sentences across the country. I guess the question that Ameline tells us to ask is whether it's absolutely clear that the district court would give the same sentence if he knew that it were advisory and that if it's not absolutely clear, we just send it back and say, district court, how about this? And I think under these circumstances that it's absolutely clear. I think that he had all the considerations and granted many of the mitigating circumstances in reaching the decision of what the range should be. And imposed rather, there's no indication that he would have given less because he did not give the low end. The government's recommendation of 51 months was a low end recommendation. And the court went beyond the calculation by the government's recommendation, which was with a low end recommendation and imposed a mid range. So in this case, I think the circumstances are fairly clear that the court did not give the  The district court would not go higher or lower, which is why he picked the mid range. If there's any other questions, I'll submit. Okay. Thank you, counsel. Ms. Polar, did you want to respond to anything said on the sentencing? I think that simply it's unclear. And the court didn't say that it, that it believed that it was applying the sentencing guidelines that was mandatory. And I did cite in my briefs, a case from the sixth circuit where it was a mid range sentence and that still was not enough reason for the court to deny the remand. And with Ameline coming down, I think that a limited remand would be appropriate. Thank you, counsel. The matter just argued to be submitted. Well, next, your argument in the United States versus Lopez.
judges: B. Fletcher, Rymer, Fisher